UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CASE NO: 3:16-CV-1195-MMH-PDB

AUBREY WALKER,

    Plaintiff,

v.

LAZER SPOT, INC.,

    Defendant.

Case No. 3:16-cv-01195-MMH-PDB

### JOINT MOTION TO APPROVE SETTLEMENT AND DISMISS PLAINTIFF'S CLAIMS, AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Aubrey Walker ("Plaintiff") and Defendant Lazer Spot, Inc. ("Lazer Spot" and, together with Plaintiff, the "Parties"), by and through their respective undersigned counsel, hereby jointly move for Court approval of the mutually agreed upon terms and conditions of the Parties' Settlement Agreement. The Parties have jointly submitted the Wage & Hour Settlement and Release Agreement ("Settlement Agreement") for the Court's inspection. *See* Exhibit 1. The Settlement Agreement fully resolves Plaintiff's claims under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et. seq*. If the Court approves the Parties' Settlement Agreement, the Parties respectfully request dismissal of the above-captioned action with prejudice, in its entirety, with the Parties to bear their own costs, fees, and expenses except as otherwise set forth in the Settlement Agreement. In support thereof, the Parties state as follows:

### MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND DISMISSAL OF ACTION

1.     On September 20, 2016, Plaintiff filed his Complaint in the United States District Court for the Middle District of Florida. The Complaint sets forth one cause of action for alleged violations of the FLSA. (Dkt. 1.) Specifically, Plaintiff claimed that he regularly worked more

than 40 hours per week, but received only his regular rate of pay for each hour worked.

2. Lazer Spot vigorously denies Plaintiff's material claims and allegations, including the assertions that Plaintiff was entitled to premium pay for hours worked in excess of 40 per week and that Lazer Spot violated the FLSA's overtime provisions with respect to Plaintiff. Lazer Spot denies any and all liability whatsoever. Lazer Spot believes that it properly and lawfully classified Plaintiff as exempt from the FLSA's overtime provisions pursuant to the Motor Carrier Act exemption. *See* 29 U.S.C. § 213(b)(1).

3. Through extensive continued discussions and negotiations based upon their independent calculations and assessments, the Parties reached a settlement, which the Parties agree reflects a reasonable compromise of the disputed issues.

4. With their settlement, the Parties aim to fully, finally, and forever resolve their dispute, to avoid the costs and uncertainty of continued litigation, and to foreclose the possibility of future litigation between the Parties. To that end, the Parties agree that the settlement payment to Plaintiff is intended to compensate him for his acquiescence to all terms of the Agreement, including a release of claims.

5. The Parties have exchanged documents and information, engaged in extensive negotiation, and debated the merits of Plaintiff's claims and Lazer Spot's defenses. Such efforts have resulted in the Parties being able to resolve their dispute through the execution of a Settlement and Release Agreement ("Agreement"), attached hereto as Exhibit 1.

6. Pursuant to *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982), various district courts require that claims for back wages under the FLSA, such as Plaintiff's claims in this case, be settled or compromised only with approval of a federal court or the Secretary of Labor.

7.     Accordingly, the Parties seek this Court's review and approval of their Agreement and the dismissal of Plaintiff's claims against Lazer Spot, with prejudice.

8.     Plaintiff represents that the settlement is fair and reasonable.

9.     Plaintiff also represents that he is receiving a separate payment for attorneys' fees and costs, which the Parties negotiated apart from his individual recovery and which the Parties agree is fair and reasonable in light of the efforts advanced by Plaintiff's counsel and the results attained on his behalf.

WHEREFORE the Parties respectfully request that this Court enter an Order: (i) approving the Parties' Agreement as a fair and reasonable resolution of Plaintiff's claims; and (ii) dismissing Plaintiff's claims against Defendant Lazer Spot, Inc., with prejudice.

## **MEMORANDUM OF LAW**

### I.     **The Court Should Approve the Settlement Agreement**

#### A.     **Standard of Review**

Pursuant to the case law of this Circuit, judicial review and approval of a tentative FLSA settlement is necessary to give it final and binding effect. *Lynn's*, 679 F.2d at 1350. As the Eleventh Circuit held in *Lynn's*:

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them….The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

*Id*. at 352- 53.

Before approving an FLSA settlement, the Court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id*. at 1354-55. If the settlement reflects a

reasonable compromise over issues that are actually in dispute, the Court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *Id*. at 1354. In determining whether the settlement is fair and reasonable the Court should consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *See Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592-Orl-22JGG, 2007 U.S. Dist. LEXIS 10287, at *2- 3 (M.D. Fla. Jan. 8, 2007).

B.  **All of the Relevant Criteria Support Final Approval of the Agreement**

When asked to review and approve the terms of settlement under the FLSA, there is a "strong presumption" in favor of approval. *Hamilton*, 2007 U.S. Dist. LEXIS at * 2-3; *see also Schottborgh v. Motor Car Concepts, II, Inc.*, 2009 U.S. Dist. LEXIS 114793, at *3 (M.D. Fla. Dec. 1, 2009) ("The Court should be mindful of the strong presumption in favor of finding a settlement fair."); *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005).

The settlement here is the negotiated result of adversarial proceedings, which itself is an indication of its fairness. In *Lynn's Food Stores,* Judge Goldberg, sitting on the Eleventh Circuit by designation, noted that the initiation of the action by the employees provides some assurance of an adversarial context. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. 679 F.2d at 1354. Here, Plaintiff made a claim for unpaid overtime wages, and Lazer Spot denied Plaintiff's allegations and asserted a number of defenses, including the defense that Plaintiff was properly classified as exempt. The Parties engaged in arm's length negotiations, aided by experienced

counsel, in order to resolve Plaintiff's claim. There was no fraud or collusion behind the settlement.

The complexity, expense, and length of future litigation, as well as the stage of the proceedings and the amount of discovery completed, militate in favor of this settlement. Although the litigation is still in a relatively early stage, the Parties exchanged information and documents related to Plaintiff's wages, hours worked, and job duties before reaching an agreement. Hence, the Agreement was reached when the Parties were fully able to make a reasonable and educated evaluation of the strengths and weaknesses of their respective positions as reflected by the actual evidence. If the Parties continued to litigate this matter, they would be forced to engage in costly litigation with an outcome that remained uncertain for both Parties.

The probability of success on the merits also weighs in favor of this settlement. Lazer Spot maintains that its drivers, including Plaintiff, are exempt from the FLSA's overtime requirements. While the FLSA requires employers to pay qualifying employees, who work in excess of 40 hours per week, overtime pay at a rate of 1.5 their hourly rate, this requirement does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of 31502 of title 49." *See* 29 U.S.C. § 213(b)(1). The fundamental test for determining whether the Secretary has jurisdiction over a motor-carrier employee is whether the employee's activities affect the safety of operation of a motor vehicle that travels in interstate commerce using public roads. *See Levinson v. Spector Motor Serv.*, 330 U.S. 649 (1947). The following two-part test was adopted by the Eleventh Circuit in *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 182 (11th Cir. 1991):

(1) the employer must show that it is a carrier whose activities are subject to Secretary of Transportation's jurisdiction; and

> (2) the employer must prove that the employee is engaged in activities of a character directly affecting the safety of operation of motor vehicles in the transportation of property in interstate commerce.

Both prongs of this test are satisfied with respect to Lazer Spot's drivers, including Plaintiff.

First, Lazer Spot's intrastate activities are subject to the jurisdiction of the Secretary of Transportation. The Secretary of Transportation has broad jurisdiction over those who operate commercial motor vehicles over public roads and highways. The fact that the Company is licensed with the DOT and has FMCSA authorization necessary to be an interstate carrier indicates that the DOT has jurisdiction over the Company. *See Baez*, 938 F.2d at 182 ("In fact, the permit issued by the [Department of Transportation] *indicates that jurisdiction has already been exercised.*") (emphasis added). The Secretary's jurisdiction extends to those drivers who transport property within a single state and are part of the "continuous stream of commerce." *See Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1229 (11th Cir. 2009) (explaining that intrastate travel becomes "part of interstate commerce if it is part of a 'continuous stream of interstate travel.'") (quoting *Chao v. First Class Coach Co., Inc.*, 214 F. Supp. 2d 1263, 1272 (M.D. Fla. 2001)). Transporting property is part of a continuous stream when there is "a 'practical continuity of movement' between the intrastate segment and the overall interstate flow." *Id.* (quoting *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 568 (1943)). "When persons or goods move from a point of origin in one state to a point of destination in another, the fact that a part of that journey consists of transportation by an independent agency solely within boundaries of one state *does not make that portion of the trip any less interstate in character*." *See Chao*, 214 F. Supp. 2d 1263 (quoting *United States v. Yellow Cab. Co.*, 332 U.S. 218 (1947), overruled on other grounds by *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984)) (emphasis added). An important factor "in

determining the shipment's essential character is the shipper's 'fixed and persisting intent' at the time of the shipment." *Mena v. McArther Dairy,* 352 Fed. Appx. 303, 306 (11th Cir. 2009) (citing 29 C.F.R. § 782.7(b)(2)); *see also* U.S. Department of Labor, Wage and Hour Division, FLSA 2005-5NA (July 29, 2005) ("There is no question that an intrastate trip constitutes interstate commerce where an out-of-state shipper designates a final destination of the goods at the time of shipment, as opposed to merely shipping goods to a storage terminal.").

Second, Lazer Spot's drivers, including Plaintiff, are tasked with performing job duties that directly affect the safety of operation of motor vehicles in the transportation of property in interstate commerce. Given that the driver position in itself affects the safe operation of a motor vehicle (*see* 29 C.F.R. §782.3(a)), there can be no dispute that Lazer Spot and its drivers, including Plaintiff, fall within the Secretary of Transportation's jurisdiction. Here, the evidence exchanged by the Parties has shown that Plaintiff routinely transported goods on multiple public roads and these goods were bound for final destinations in other states. Thus, in Lazer Spot's view, Plaintiff performed duties and engaged in activities, in furtherance of Lazer Spot's commercial enterprise, which caused him to be exempt from the FLSA's overtime provisions by virtue of the MCA. Despite Lazer Spot's assertions, however, Plaintiff contends that he never actually drove motor vehicles or transported goods on public roads as Defendant's employee.

In light of this evidence, both parties were fully prepared to litigate the matter. Thus, the Parties' Agreement represents an outcome that is reasonable given the facts of the case. Moreover, the Parties agree that settlement is reasonable in light of the range of possible recovery taking into account Plaintiff's likelihood of success, hourly rate of pay ($13.50 to $17.00 during the potentially relevant period), the number of workweeks at issue, and the number of overtime hours worked by Plaintiff.

In light of the foregoing, both Parties, and their counsel, agree that the settlement represents a fair and reasonable resolution of the dispute.

### C. The Attorneys' Fees Award is Fair and Reasonable

Approval of the attorneys' fees and costs provision of the Agreement is also warranted. Plaintiff has accrued $439.00 in costs in litigating this matter in filing fees and service of process costs. In addition to these costs, Plaintiff has accrued over $3,500.00 in attorneys' fees litigating this matter. Plaintiff's counsel has spent approximately twelve (12) hours litigating this matter between gathering facts of the case, researching case law, drafting various documents for filing and communicating with the client. Plaintiff is seeking $2,349.00 in fees and costs only in an effort to resolve the matter in a timely manner due to the uncertainty of litigation.

## II. Conclusion

In sum: (1) there is absolutely no collusion behind this Agreement; (2) the expense and likely duration of the litigation would by far have exceeded the amount of the settlement reached; (3) the settlement was reached relatively early in the proceedings, but, given the substantial amount of evidence, and the number of witnesses involved, this matter would have required extensive litigation and judicial involvement; (4) while Plaintiff alleged violations of the FLSA, there was also strong opposition and a possibility that Plaintiff would not have been able to prevail; (5) the settlement is reasonable in light of the range of possible recovery; and (6) in the opinions of counsel, the settlement reached – including the separate amount negotiated for Plaintiff's attorney's fees and costs – was in the best interest of the Parties and represented a fair and reasonable compromise of disputed claims. For these reasons, this Court should grant this Joint Motion, approve the Parties' Settlement Agreement, and dismiss this case with prejudice.

Respectfully submitted, this 9th day of June, 2017.

| PLAINTIFF AUBREY WALKER | DEFENDANT LAZER SPOT, INC. |
|---|---|
| s/James M. Loren | s/Jeffrey L. Glaser |
| James M. Loren, Esq. | Jeffrey L. Glaser* |
| Florida Bar No. 0055409 | Katherine M. Smallwood |
| Law Offices of Goldberg & Loren, P.A. | Florida Bar No. 0089669 |
| 100 South Pine Island Rd. | SEYFARTH SHAW LLP |
| Suite 132 | 1075 Peachtree Street, N.E. - Suite 2500 |
| Plantation, Florida 33324 | Atlanta, Georgia 30309-3958 |
| Telephone: (469) 214-4111 | Telephone: (404) 881-5467 |
| Facsimile: (954) 585-4886 | Facsimile: (404) 724-1667 |
| E-mail: jloren@goldbergloren.com | E-mail: ksmallwood@seyfarth.com |
| | |
| | *admitted pro hac vice |
| | |
| | Sally R. Culley |
| | Florida Bar No. 0095060 |
| | E-Mail: sculley@rumberger.com |
| | RUMBERGER, KIRK & CALDWELL |
| | A Professional Association |
| | Lincoln Plaza, Suite 1400 |
| | 300 South Orange Avenue (32801) |
| | Post Office Box 1873 |
| | Orlando, Florida 32802-1873 |
| | Telephone: (407) 872-7300 |
| | Telecopier: (407) 841-2133 |

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2017, I filed the foregoing **JOINT MOTION TO APPROVE SETTLEMENT AND DISMISS PLAINTIFF'S CLAIMS, AND INCORPORATED MEMORANDUM OF LAW** using the CM/ECF system, which will automatically send electronic notification of such filing to the following attorneys of record:

> James M. Loren
> Goldberg & Loren, P.A.
> 100 South Pine Island Rd.
> Suite 132
> Plantation, Florida 33324

By: *s/ Jeffrey L. Glaser*
      Jeffrey L. Glaser