**AUBREY WALKER,**

    *Plaintiff,*

v.                                                                                                                                                            NO. 3:16-CV-1195-J-34PDB

**LAZER SPOT, INC.,**

    *Defendant.*

---

## Report and Recommendation

Before the Court in this case under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, is the parties' motion for approval of a settlement agreement and entry of a stipulated judgment dismissing the case with prejudice. Doc. 27. I recommend granting it.

## Background

The plaintiff, Aubrey Walker, worked as a "lead spotter" for the defendant, Lazer Spot, Inc., from June 2014 to at least November 2016. Doc. 1 ¶¶ 2, 4, 6, 7; Doc. 10 ¶ 1. According to him, Lazer Spot provides "third party yard management services including … spotting, shuttling within 100 air miles, trailer rentals, gate personnel staffing, and computerized yard management systems and training." Doc. 1 ¶ 4.

In the complaint, he alleges he worked 58 to 60 hours a week without receiving overtime wages and asserts Lazer Spot owes him $35,739 in unpaid overtime wages and liquidated damages. Doc. 1 ¶ 9. He brings a single claim: a FLSA claim for failure to pay overtime wages. Doc. 1 ¶¶ 13–15. In answers to the Court's interrogatories, he claims $39,100 for wages for 20 hours of overtime work a week from June 2014 through September 2016. Doc. 10 at 2. He asserts he kept a record of hours worked

through a mobile app and complained in June 2016, but Lazer Spot provided no response. Doc. 10 at 2.

Lazer Spot filed an answer. Doc. 7. It denies liability and raises ten affirmative defenses, including that Walker is exempt from FLSA's overtime requirements. Doc. 7. It filed a verified summary of wages and hours showing Walker worked between 8.25 and 88 hours a week from June 2014 to September 2016 (usually more than 50 hours a week but less than 61 hours a week) at hourly rates from $13.50 in 2014 to $17 in 2016. Doc. 14.

The parties conducted an unsuccessful in-person settlement conference. Doc. 21. They asked the court to allow them to continue settlement discussions for another month. Doc. 21 at 2. The Court granted the request, Doc. 22, and about a month later, they notified the Court that they had settled the case, Doc. 23. The Court entered an order directing them to "submit settlement documents for the Court's review" if they had compromised or a stipulation of dismissal if they had not. Doc. 24 ¶ 2 & n.1

In the current motion, the parties explain they have reached an agreement that fully resolves the FLSA claim and request dismissal of the case with prejudice with each party to bear its own attorney's fees, costs, and expenses, except as otherwise stated in the agreement. Doc. 27 at 1. They explain Lazer Spot "vigorously denies" Walker's claims and allegations and believes it properly classified him as exempt from FLSA's overtime provisions under the motor carrier act exemption, 29 U.S.C. § 213(b)(1) ("The provisions … shall not apply with respect to—(1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service."). Doc. 27 at 2, 5–7. They represent the agreement was reached following "extensive continued discussions and negotiations based upon their independent calculations and assessments," exchanges of documents and information, and debates on the merits, and is intended to "fully, finally, and forever resolve their dispute, to avoid the costs and uncertainty of continued litigation, and to foreclose the possibility of future litigation between the

parties." Doc. 27 at 2. They agree the payment to Walker "is intended to compensate him for his acquiescence to all terms of the Agreement, including a release of claims." Doc. 27 at 2. The parties agree the agreement is a "reasonable compromise of the disputed issues." Doc. 27 at 2. They explain it includes a separately negotiated payment for attorney's fees and costs, which they represent is reasonable in light of the hours Walker's counsel expended (12) and the results he obtained and has been reduced from the $3500 actually incurred to $2349. Doc. 27 at 3, 8.

The parties conclude,

> In sum: (1) there is absolutely no collusion behind this Agreement; (2) the expense and likely duration of the litigation would by far have exceeded the amount of the settlement reached; (3) the settlement was reached relatively early in the proceedings, but, given the substantial amount of evidence, and the number of witnesses involved, this matter would have required extensive litigation and judicial involvement; (4) while Plaintiff alleged violations of the FLSA, there was also strong opposition and a possibility that Plaintiff would not have been able to prevail; (5) the settlement is reasonable in light of the range of possible recovery; and (6) in the opinions of counsel, the settlement reached – including the separate amount negotiated for Plaintiff's attorney's fees and costs – was in the best interest of the Parties and represented a fair and reasonable compromise of disputed claims.

Doc. 27 at 8.

With the motion, the parties filed the settlement agreement. Doc. 27-1. The agreement is captioned, "Wage & Hour Settlement and Release Agreement." Doc. 27-1 at 2.[1] It contains several "whereas" clauses, including that a dispute arising out of Walker's employment with Lazer Spot exists, Walker alleges Lazer Spot denied him proper overtime compensation, Lazer Spot denies the allegations, Walker concluded after discovery "there was a significant likelihood" the court would find he had been properly classified as exempt, the parties wish to avoid the burden and uncertainty of litigation, and the parties want "to effect a full, complete, final, and binding

---

[1]The page numbers on the agreement do not match the page numbers in the CM/ECF header. *See* Doc. 27-1. This report and recommendation cites the CM/ECF header.

settlement and compromise of all claims that Plaintiff may have against Defendant arising out of or relating to his employment with Defendant (whether asserted in the Complaint or not) from the beginning of time through the date of entry of this Agreement." Doc. 27-1 at 2.

Lazer Spot agrees to pay Walker and his counsel $4250 distributed as follows: $950.50 for alleged unpaid overtime wages, minus "[a]pplicable statutory deductions"; $950.50 for "alleged liquidated damages and/or interest on back wages"; and $2349 for attorney's fees and costs. Doc. 27-1 at 3. The parties agree that, other than the agreed payment, they will bear their own attorney's fees and costs and no party owes another other fees or costs. Doc. 27-1 at 3.

For the payments, Walker agrees to release and discharge Lazer Spot and all affiliates from all claims that "relate to any and all applicable federal and state wage-and-hour claims, rights, demands, liabilities and causes of action" (except for any rights that cannot be waived by law or for a pending workers' compensation claim). Doc. 27-1 at 3–4. He also promises to not sue any of the released parties for any claim covered by the waiver and release (except for a lawsuit to enforce the terms of the agreement or for a breach of the agreement), Doc. 27-1 at 4, waives any right to appeal the litigation, and affirms that the settlement is contingent on full execution and a court order dismissing the claims with prejudice, Doc. 27-1 at 5.

The parties acknowledge the agreement is the result of a compromise and Lazer Spot does not admit the allegations. Doc. 27-1 at 4. The parties agree they have been represented by counsel, had sufficient time to consider the agreement and consult counsel, and have not relied on representations or warranties other than those in the agreement. Doc. 27-1 at 5. Walker represents he has been encouraged to seek advice on the agreement, has had time to seek advice, has obtained advice from counsel, has carefully read and fully understands the agreement, is voluntarily entering into it, and "was not coerced, threatened, or otherwise forced to sign [the] Agreement." Doc. 27-1 at 4.

Both parties signed the agreement. Doc. 27-1 at 6.

**Authority**

Passed in 1938, the FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endanger[ ] the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945). If an employee proves that his employer violated the FLSA, the employer must pay him the amount of unpaid wages (for up to two years or three if the employer had intentionally violated the law, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135, (1988)), an equal amount as liquidated damages (absent the employer's proof of good faith and reasonable grounds for believing it was not violating the FLSA, 29 U.S.C. § 260), and attorney's fees and costs. 29 U.S.C. § 216(b).

To foster the FLSA's purpose and to prevent an employer from using its superior bargaining position to take advantage of an employee, the Eleventh Circuit, in *Lynn's Food Stores, Inc. v. U.S. by & through U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982), placed limits on the ability of private parties to settle a FLSA case. *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013). To do so, they must present their agreement to the court, and the court must scrutinize it for fairness. *Id.* at 1306–07. If the agreement reflects a fair and reasonable compromise over a disputed issue, the court may approve it to promote the policy of encouraging settlement. *Lynn's*, 679 F.2d at 1354.

A court should presume a settlement is fair and reasonable, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977), and then consider six factors: (1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the case; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel, *Leverso v. SouthTrust Bank of Ala. Nat. Ass'n*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994).

"FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). Thus, in addition to reviewing a compromise of a FLSA claim, a court must "award a reasonable attorney's fee to [the plaintiff's] counsel." *Id.* at 352. If the parties negotiated attorney's fees separately from the amount to the plaintiff, the court need not undertake a lodestar review of the attorney's fees for reasonableness. *Evans v. Right Path Behavioral Health Servs., LLC*, 3:15-CV-970-J-34JBT, 2016 WL 4272336, at *3 (M.D. Fla. Aug. 5, 2016), *report and recommendation adopted,* 3:15-CV-970-J-34JBT, 2016 WL 4247802 (M.D. Fla. Aug. 11, 2016) (Howard, J.); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

**Analysis**

Accepting the parties' representations as true, the agreement is a fair and reasonable compromise of a disputed issue.

On the first factor (existence of collusion), the parties represent there was no fraud or collusion, Doc. 27 at 5, 8, and none is apparent. The parties were represented by counsel and conferred with counsel in deciding whether to settle. Doc. 27-1 at 4, 5. According to the parties, the settlement is the product of debate and arms-length negotiation in an adversarial setting. Doc. 27 at 2, 4. Walker says he accepted the terms without coercion, threat, or other force. Doc. 27-1 at 4.

On the second factor (the complexity, expense, and likely duration of the case), absent settlement approval, the action could last for at least another year and include more discovery, cross motions for summary judgment, and a trial—in the parties' words—"the expense and likely duration of the litigation would by far have exceeded the amount of the settlement reached" Doc. 27 at 8. They opine the settlement is "a reasonable compromise of the disputed issues." Doc. 27 at 2.

On the third factor (the stage of the proceedings and the discovery completed), the parties settled within six months of the action and after an exchange of

information on Walker's wages, hours worked, and job duties. *See* Doc. 1 (complaint filed September 20, 2016); Doc. 23 (joint notice of settlement filed March 28, 2017); Doc. 27 at 5 (listing discovery completed). They represent they "were fully able to make a reasonable and educated evaluation of the strengths and weaknesses of their respective positions as reflected by the actual evidence." Doc. 27 at 5.

On the fourth factor (the probability of the plaintiff's success on the merits), the parties agree a bona fide issue exists (whether the motor carrier exemption applies). Doc. 27 at 5–7. They agree that, absent the agreement, "they would be forced to engage in costly litigation with an outcome that remained uncertain for both [p]arties," Doc. 27 at 5, and the "outcome … is reasonable given the facts of the case," Doc. 27 at 7. In the agreement, they state Walker concluded after discovery that "there was a significant likelihood" the court would find he had been properly classified as exempt. Doc. 27-1 at 2.

On the fifth factor (the range of possible recovery), Walker could recover nothing if he loses or, according to him, $39,100 if he wins on all issues, Doc. 10 at 2, excluding attorney's fees and costs. The amount to Walker ($1901) is well below the amount claimed, but the parties agree the amount "is reasonable in light of the range of possible recovery taking into account Plaintiff's likelihood of success, hourly rate of pay ($13.50 to $17.00 during the potentially relevant period), the number of workweeks at issue, and the number of overtime hours worked." Doc. 27 at 7.

On the sixth factor (the opinions of counsel), the parties' lawyers agree the settlement is in the parties' best interest and is a "fair and reasonable compromise of disputed claims." Doc. 27 at 8.

The agreement contains no provision commonly found objectionable, such as a general release provision, a confidentiality provision, and a non-disparagement

provision, and the motion does not ask the Court to retain jurisdiction to enforce the agreement.[2]

On attorney's fees and costs, given the parties' representation they agreed on the attorney's fees separately from the amount to Walker, Doc. 27 at 3, the Court need not undertake a lodestar review. *See Bonetti*, 715 F. Supp. 2d at 1228. Moreover, $2349 in fees and costs appears reasonable given that Walker's counsel communicated with him, drafted and filed the complaint, prepared damages calculations, reviewed the scheduling order, filed Walker's responses to Court interrogatories, reviewed Lazer Spot's verified summary, engaged in settlement negotiations resulting in a written agreement, and jointly filed the current motion. The parties agree the amount is fair and reasonable. *See* Doc. 27 at 3, 8.

A finding the settlement is a fair and reasonable resolution of a bona fide dispute and approval of the settlement agreement are warranted.

---

[2]If an agreement to settle a FLSA overtime claim includes a general release, many judges will not approve the settlement because, without an indication of the value of the released claims, the fairness and reasonableness of the compromise cannot be determined. *See, e.g., Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351–52 (M.D. Fla. 2010).

If an agreement to settle a FLSA overtime claim includes a confidentiality provision, many judges will strike the provision because it contravenes the FLSA's purpose and undermines the Department of Labor's efforts to inform employees of their rights. *See, e.g., Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242–43 (M.D. Fla. 2010).

If an agreement to settle a FLSA overtime claim includes a non-disparagement provision, many judges will strike the provision because its placement of a prior restraint on one's ability to speak freely about the case contravenes public policy and the First Amendment. *See, e.g., Loven v. Occuquan Grp. Baldwin Park Corp.*, No. 6:14–cv–328–Orl–41TBS, 2014 WL 4639448, at *3 (M.D. Fla. Sept. 16, 2014) (unpublished).

## Recommendation[3]

I recommend:

1. **granting** the parties' motion for approval of the settlement of Walker's FLSA claims and dismissal of the case with prejudice, Doc. 27;

2. **approving** the parties' settlement, Doc. 27-1, as a fair and reasonable resolution of a bona fide dispute; and

3. **dismissing** the case with prejudice.

**Entered** in Jacksonville, Florida, on **August 25, 2017**.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c: The Honorable Marcia Morales Howard
Counsel of Record

---

[3]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.